# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-0942


JOHN B. SIMON

VERSUS

NATCHITOCHES PARISH SCHOOL BOARD


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 2
PARISH OF RAPIDES, NO. 00-00207
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE


\*\*\*\*\*\*\*\*\*\*


## OSWALD A. DECUIR
## JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**

**George Arthur Flournoy**
**Flournoy & Doggett**
**P. O. Box 1270**
**Alexandria, LA 71309-1270**
**(318) 487-9858**
**Counsel for Plaintiff/Appellant:**
    **John B. Simon**

**Mark Alan Watson**
**Stafford, Stewart & Potter**
**P. O. Box 1711**
**Alexandria, LA 71309**
**(318) 487-4910**
**Counsel for Defendant/Appellee:**
    **Natchitoches Parish School Board**

**DECUIR, Judge.**

This appeal of a workers' compensation claim raises the very narrow and specific question of whether an employer, who voluntarily overpays the claimant a certain amount of sick pay, should be granted an automatic credit against workers' compensation benefits to which the claimant is later found to be entitled.

John Simon, a longtime teacher with the Natchitoches Parish School Board, was first injured in 1995 while breaking up a fight between two students. His condition required back surgery and, after recovering, he returned to classroom teaching. Simon was again injured, twice, in 1999. In April, he was hurt while restraining a combative student and, in May, he was pushed to the ground and kicked while breaking up a fight. Simon's injuries prevented him from teaching during the 1999-2000 school year. He received his full salary for that year, in accordance with the provisions of La.R.S. 17:1201, which allow for the payment of full salary to a teacher who has been injured by assault, battery, or physical contact with a student.

For the 2000-2001 school year, Simon was offered an administrative position. The responsibilities of the job did not exceed Simon's physical limitations, and he remained in that position all year. The following year, however, the same position was not available. Therefore, Simon did not work during the 2001-2002 school year. He again received his full salary, plus an apparent overpayment of $6,000.00. Simon requested an administrative position for 2002-2003, but he was instead offered a position as a special education instructor. He accepted the assignment but resigned on October 1, 2002 because of chronic pain and fear of re-injury. Upon resignation, Simon gave an administrator a note from his treating physician, Dr. John Harris, requesting that Simon be excused from work. Simon's attorney made a demand for workers' compensation benefits on October 10, 2002. The records in evidence show

that Simon's last payroll check from the School Board included wages for approximately two weeks in October.

The School Board sent Simon to Dr. Carl Goodman, the orthopedic surgeon who had treated Simon after his 1995 injury. Dr. Goodman issued a report on November 25, 2002, wherein he permanently restricted Simon from classroom teaching and disciplinary responsibilities. The School Board initiated workers' compensation indemnity benefits on January 3, 2003, retroactive to November 25, 2002.

This appeal concerns the seven week period between October 1, 2002 and November 25, 2002 wherein Simon received no indemnity payments and no §17:1201 wages, also referred to as a type of sick pay. The trial court found that Simon had been overpaid in the past by approximately $6,000.00, which credit offset the amount owed by the School Board for the period at issue.

Simon argues the School Board is not entitled to a credit because, first, the issue was not properly raised, and second, no evidence was presented showing the School Board paid Simon pursuant to §17:1201. He urges this court to award benefits for that seven-week period. Simon further argues that the School Board should be penalized for non-payment during that period and further penalized for the delay in initiating payments after receipt of Dr. Goodman's report. He also asks for attorney fees.

Finding the issue of a credit to have been properly raised in the School Board's answer to Simon's initial claim, we turn to the merits of the appeal. First, we find ample evidence to support the conclusion that the wages paid to Simon for the years he was unable to work were paid pursuant to §17:1201. Second, we find no manifest error in the finding of an overpayment of approximately $6,000.00 during the 2001-2002 school year, a year in which Simon was unable to work and was entitled to only the amount of his salary at the time of his injuries. The trial court's decision to apply

2

that overpayment as a credit or offset on the amount of workers' compensation benefits later awarded to Simon was not erroneous.

In a case involving the simultaneous payment of workers' compensation benefits and §17:1201 wages, the fourth circuit determined that the school board was entitled to a credit for any amount of §17:1201 wages that exceeded the amount of the claimant's wages at the time of her injury. The court reached the following conclusions:

> Regarding the coordination of benefits in this matter, we have noted that the claimant is entitled to receive assault pay benefits to supplement her workers' compensation benefits as long as the total of these benefits does not exceed her pre-injury salary and/or earnings. The amount of workers' compensation benefits to which claimant is entitled is set by statute. In calculating the assault pay benefits owed to claimant, the School Board should have paid claimant the difference between her pre-injury salary and her workers' compensation benefits, and no more. The School Board admits that claimant's assault pay has increased over time to reflect salary increases to which claimant would have been entitled if she were still working as a teacher. Unfortunately for claimant, R.S. 17:1201(D)(1) is clear that the total amount of sick leave (assault pay) and workers' compensation benefits paid to a claimant cannot exceed the total amount of the regular salary the member of the teaching staff was receiving *at the time the injury or disability occurred.* (Emphasis ours.) Therefore, the School Board is entitled to a credit for amounts paid to claimant in assault pay that exceeded the amount of assault pay to which she would have received at the time of her injury.

*Anderson v. Orleans Parish School Bd.*, 00-0909, pp. 10-11 (La.App. 4 Cir. 8/1/01), 792 So.2d 943, 949, *writ denied*, 01-2495 (La. 12/7/01), 803 So.2d 37. Accordingly, we find no manifest error in the trial court's decision to grant a credit to the School Board.

We are troubled, however, by the School Board's admitted inaction to Simon's demand for compensation, and its delay in initiating indemnity payments once Dr. Goodman's report was received. The witness who testified on behalf of the School Board had no explanation. It is clear from his testimony that he was unaware of a past overpayment; his decision not to pay Simon had nothing to do with that overpayment.

3

There was merely the suggestion that the school holidays may have caused some of the delay.

La.R.S. 23:1201(F)(2) provides for the imposition of penalties and attorney fees unless "the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." We find nothing in the record to suggest that the School Board's failure to pay indemnity benefits for the period from October 1, 2002 through November 25, 2002 resulted from conditions over which the School Board had no control, nor do we find that Simon's claim was reasonably controverted. While the School Board's decision to send Simon to Dr. Goodman shows an effort to investigate the claim, it does not explain the failure to consider Dr. Harris's note or any prior medical evidence that would have supported Simon's two previous years of disability. Furthermore, even if the School Board had based its decision to withhold indemnity payments on the $6,000.00 overpayment of wages, such a unilateral taking of an offset is generally not allowed. *See Clark v. Town of Basile,* 98-439 (La.App. 3 Cir. 10/7/98), 719 So.2d 730.

Accordingly, we find error in the trial court decision to deny Simon's claim for penalties and attorney fees. Based on the evidence in the record, we award $2,000.00 in penalties for the failure to pay indemnity, or apply for an offset in payments, for the period from October 1 through November 24, after receipt of Dr. Harris' s note. We also award $1,450.00 in penalties for the delay in payment of benefits from November 25 through January 3, after receipt of Dr. Goodman's report. Pursuant to La.R.S. 23:1201(F), we award $7,500.00 as reasonable attorney fees.

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and rendered. Penalties in the amount of $3,450.00 and attorney fees in the amount of $7,500.00 are hereby awarded to the claimant, John Simon. Costs of this appeal are assessed to the Natchitoches Parish School Board.

4

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**